24-13971, Jeffrey Andrioff v. Stericycle. Mr. Madoff. Thank you, Your Honors. May it please the Court, I'm Aaron Madoff. I stand before you today representing Jeffrey Andrioff, a white male who made a complaint of race discrimination in promotion. Among the allegations of the complaint is that Mr. Andrioff was one of two applicants for the position himself and Ms. Candace Yetter, that he was vastly more qualified than Ms. Yetter, that she received the promotion. When he asked the decision-maker why she was selected over him, the answer was, she's not another white male. And what's her race? She is white. And the decision-maker's race is also white? I don't believe that that's a relevant question, but we can presume so. No, I'm not asking you to presume anything. Does the complaint say anything about the decision-maker's race? I would have to take a quick look at the complaint. It's not something I recall off the top of my head. I apologize. Okay. You can look at it later. Don't worry. You can answer. Judge Kidd had a question for you. The answer is, yes, she is also white. Okay. So I'm asking, how does black come into consideration? Because the district court did the analysis wrong. The question is not what Ms. Yetter's race is. The question is, but for Mr. Andrioff's race, would he have gotten the position? If we leave all other things being equal, if Mr. Andrioff had been another race, let's say Mr. Andrioff is black, he would no longer have been a white male. The reason that she got the promotion, as said by the decision-maker, was because she's not a white male. But doesn't that focus on the statement, she's not a white male? There are two different things, right? There's the white and the male. She's a female who did get the promotion. I guess I'm just wondering why the focus is on the race and not the gender. Very simply because he made a race discrimination claim. It could be either way. You're absolutely right, Your Honor. He could have made a gender discrimination claim. You can have two but-for causes. We have that from Bostock and others. But the question is, what's the claim that we're analyzing? We're not analyzing gender. We're analyzing race. But for his race, would he have had the position? The answer is yes. Both because the decision-maker made it very clear, straightforward. Why did she get the position over me? She got the position over you because she's not a white male. If he'd been a black male, if he'd not been a white male, that would no longer be the issue. We step back and look at the forest for the trees here. Rather than doing the direct analysis, they want to tick a box for a minority, whether it's by gender or by race or whatever it may be. But when we do the analysis that the cases require, when they lay out for us, we do the but-for analysis, we change one thing. We change Mr. Andreoff's race, and now he gets the position. How do you know he would have gotten the position? Number one, we have the exact statement by the decision-maker that that's the reason. Number two, he's vastly more— But the person who did get the position has the same race. So how are you saying that's the but-for? The but-for is not just gender, it's race. White male is what he said. If he had not been a white male, then the answer to the question is different. Mr. Andreoff asked— It's very odd, Mr. Madoff, instinctively to think that a white decision-maker who doesn't choose a white applicant for a promotion and chooses another white applicant for their promotion engages in race discrimination. That's intuitively hard to sort of fathom. Maybe you're right, but we don't deal on a blank slate. So we have a case called Jeffries from 1980, Title VII race discrimination case involving a promotion, and here's what it says. We agree with the district court that Jeffries failed to prove race discrimination in promotion. Jones, who was promoted in an acting capacity to the jobs Jeffries sought, was also black. So that's a holding from us, whether we like it or not, whether we think it was right or not, that a black person who was denied a promotion in favor of another black person can't prove race discrimination. What's different about your case? Several items. First of all, we are at a motion to dismiss stage. Same allegations, though. Whatever was insufficient as an evidentiary score there would necessarily be insufficient here as to allegations. So what's different from Jeffries to your case? We take the inferences. When you're at a summary judgment stage, you're talking about the evidence, but I will step that aside, and I will also agree with you, and that is the precedent that's one piece of precedent there. I believe it conflicts with much other precedent, particularly considering Bostock. It's an older precedent, but we, in a case of conflict, we have to follow the earlier decided case, which I think here is Jeffries. Respectfully, I disagree. I believe that we follow Bostock, the Supreme Court case, which comes later and explains to us that we can have more than one but-for reason. And the analysis that we should be engaging in, even if Jeffries made the mistake he didn't engage in the analysis, is the but-for analysis. The but-for analysis is if Mr. Andrioff's race was different, if he had been black, would he have gotten the position? The answer is yes. That's the analysis that we should be focusing on. That change means that he didn't get the position because of his race, and that's the inference that we take when we are particularly at the motion for the fifth stage. Do you have anything in your complaint? Have you alleged any other sort of direct evidence of racial discrimination aside from that one statement? Of direct evidence? No. But we are also at a complaint stage. I don't believe that direct evidence or indirect evidence really matters at this point. That's a summary judgment question. And what we do have is that he is the more qualified candidate. What were the metrics for the position? The metrics for the position, as far as the complaint is alleged, is the team performance and the performance that she had had before. No, no, no, no, no. From the company's perspective, what were the metrics for the promoted position? The company hasn't provided any metrics. And you don't allege any? No, we don't need to at this point. So his qualifications, according to the complaint, may not have been what the company was looking for. May not? You're right. I don't know. We need to do the discovery first to find out. He didn't know what the company was looking for when he applied for the promotion? He believes he did, and he laid them out in the complaint. No. You say the complaint is silent about that. It can't be both. No. The complaint is silent about what the company specifically said. No, no, no, no. The complaint does lay out the metrics. I want to know what was the company. When the company advertised the position, what did the company say were the requirements for the promotion? He did not state it in the complaint in terms of what the company asked for in the advertisement for the promotion. He stated it in terms of the fact that he is, that her, if I may go to the complaint if you'll give me just a moment. That Yetter's team had not been meeting sales goals. He had. For two years, Yetter's team had not had a higher than average employee turnover. The average deal size of Yetter's team was below average. The ramp to performance for new hires were lower on Yetter's team. All of these things prove what they're doing. He's doing better. But those things may not matter to the company for the promoted position. Then we need an answer saying that that's not the case and we need discovery to determine it. If we were at a summary judgment stage, Your Honor, we would be having that conversation. We're not at a summary judgment stage. We don't have an answer, let alone the discovery. What we do have is well-pled allegations of a complaint that lay out how he is creating an inference. We can make those inferences at a complaint stage. We don't have anything that contradicts those things. We don't have an answer. We don't have the discovery. What we need to do is take a look at the complaint and ask, can we make reasonable inferences, which will lead us to the conclusion that the complaint states a cause of action. And we can certainly look at her performance and say his performance is vastly better, and we can infer that he would have gotten the position. Remind me, does the complaint say that the company was choosing between just those two candidates? At that point, yes, Your Honor. At that point, that's who we've got left. They don't have another candidate. But what we do have, and I come back to this. I mean this is the additional evidence because at a complaint you're talking about inference, and direct evidence versus circumstantial evidence doesn't make a difference at this stage, at the pleading stage. But what we still have is an answer to the question. Why did she get the job over me? My question was evidence of racial discrimination, and I guess your response to that is the statement and your view that based on the metrics that you've identified, that he was more qualified than her. That's what you rely on. I don't think I need to go to the metrics, Your Honor, but if you're going to take the view that the statement doesn't do it, then of course I back up to that point. I worry about complaints in the future if we have an opinion that says an answer to a question of why didn't I get it because you're a white male is not enough. That concerns me at summary judgment for lots of cases. It concerns me on directed verdicts. It seems to me that if you are told you're not getting the job because you're a white male, changing whether you're a white male changes the answer to the question, and that should be enough. But, Your Honor, if the statement was she's female, would you have a plausible claim of race discrimination? That would be a very different case because you've got two but fours. I know. And certainly more difficult. That's the answer. The answer is why didn't I get it? She's a woman. I think that the answer at that point is yes, we probably would because you're at the stage of the complaint because he's more qualified, and there's an implication there. We do not do a McDonnell-Douglas test at this point, but I do concede that that becomes a much more difficult question than the one we face in this case. All right. Thank you very much. We'll save your full time for rebuttal, Mr. Madoff. Thank you, Your Honor. Mr. Wilson. May it please the Court. Courtney Wilson of Littler Mendelsohn on behalf of the defendant from the appellee here. To answer a couple of your questions, one is the complaint does not allege the race of the decision maker, but we don't think that is pertinent either way. I don't think that helps or hurts us. The important fact that the Court has already pointed out to repeatedly is that the decision was between just two people, and they were both of exactly the same race. That's their allegation. We take that allegation as true, and there can be no dispute about that. Well, if there are only two people being considered, and the statement alleged is she got the position because she's not another white male, why don't we have to infer at the motion-to-dismiss stage that as between these two people, he didn't get it because he was white, at least in part because he was white? Because both the case law and logic tell us that there is no possible way he could not have got it because of his race when they are both of the same race. So the only thing that could mean is that we looked at race. That gave us nothing. We then looked at gender. That gave us something we wanted. And then we acted because this is all hypothetical. This is talk of an intent to discriminate without an action because you cannot act on discrimination as between two people who are identical in the relevant category. And this is a 1981 case. This is not a Title VII case. I imagine there is regret that this is not a Title VII case where they could have brought up gender or sex, but it's not. It's 1981, which is strictly limited to race. And there just is no discriminatory act. But let's talk about – because I think looking at it through a Title VII gender discrimination lens creates some problems, some possible problems for you. If Mr. Andrioff had filed the Title VII complaint alleging gender discrimination only and had alleged the same things he alleged here, would he get past the 12B6 motion? Very likely. Why? Because there he's got both the whites and the male. Same as here. Because he also has the act. A female was promoted. A male was not promoted. He does not have that in his 1981 claim. It's not the discriminatory intent to distinguish between the male and the female without the act of promoting the female and not promoting the male. He might have that under Title VII with sex discrimination, but he does not have that under Section 1981 race discrimination. He did not choose between people of different races, and he did not promote one person of one race and not promote another person of another race. We have cases following Jeffrey's which suggest that it is not necessarily fatal to a race discrimination claim that a person of the same race was favored. What do you say about those cases? The ones that they have cited and that we have addressed, a prime example being the later Howard case from once it was the 11th Circuit, do say that and are consistently saying that, not in the context of a promotion. They are in a context of termination and replacement. Howard made a very strong point of that, footnote four, why doesn't Jeffreys control Howard? The reason is because Jeffreys was a promotion case where you have two candidates you can put side by side and determine are they the same race, are they not the same race, and then I can discriminate or not discriminate on that basis. In the Howard case and all the other cases they cited, it is a termination and a later replacement of a person. In Howard they said he wasn't replaced until almost a year later. They weren't even sure that he was put into exactly the same job that Howard was terminated from. I suggest to you that the other cases fall into some degree of that same category. You are there deciding between if I terminate a person of this race or gender or national origin or religion, I think I can go out and get a person of a more desirable race or gender or religion. Many times that's true, sometimes it's not. But when you are choosing a promotion and these two people are in front of you and it's going to be either A or B, you know what you're doing. You are capable of discriminating and when you terminate one, you could discriminate. But if they're the same race, it can't be because of race. It has to be some other factor. I would point out that one of the remedies they ask for in their complaint is reinstatement. I think this is a little awkward in terms of a promotion, but the historical remedy of reinstatement would say, well, give us, it's Ms. Yetter was the other successful candidate, give Mr. Andrioff, Ms. Yetter's promotion. Well, then wouldn't Ms. Yetter be able to sue us under the same theory and the same statute saying, although I'm a white woman, you violated 1981 because if I was a black woman, now I would have two check boxes. Mr. Andrioff, who wants you to hypothesize that he's a black male, would have only one box checked. And so now because of the discrimination, Ms. Yetter would have a cause of action under 1981. Is that the only request for relief in the complaint? No. They ask for damages, unit of damages. Right, but a court is assuming a case and a claim has validity. A court is not bound by the remedies requested by a party. You can find that a claim has heft and then say that remedy is inappropriate for that violation. I'll give you another remedy. Right. I'm just trying to suggest it as an example of why this claim isn't viable doesn't make sense. Because they're saying hypothesize that I'm a non-white person and therefore I should have gotten the job and that would disenfranchise the other party. Do you know of any cases from other... On the same basis, sorry. Do you know of cases from other circuits that have addressed this sort of same race issue in either a Title VII or a 1981 race discrimination scenario? I'm not aware either way, Your Honor. You know, as the court pointed out, Jeffries is a controlling decision. Howard, to me, reaffirmed Jeffries. It said the only reason Jeffries doesn't control this case is for all the distinguishing factors of Howard's primary that he wasn't... He was not a promotion. He was fired and then replaced almost a year later and after he filed an EEOC charge, in fact. So it said there are a lot of factors that distinguish Howard from Jeffries. Otherwise, Jeffries would control. Well, this case is Jeffries. Jeffries does control. Your Honors, they talk about whether it's direct evidence or not and I kind of agree that at the pleading stage, whether we characterize it as circumstantial or direct evidence doesn't matter. But what it doesn't show are two things. One, direct evidence is a statement which correlates to discrimination. That's a word that's used in the case law and they've used it in their brief. This discrimination is not alleged to have correlated to anything. Again, they said he expressed this intent, this plan, this thought process that they would have preferred something other than a white male. But as to the relevant part of that, which is the race, the whiteness, he did not act on that. So his statement does not correlate to the action. And that's the definition of direct evidence, a statement that correlates to the action, not one that is entirely, 100%, inconsistent with the action. Which is, we don't want to hire a white person. We don't want to promote a white person. And they promoted a white person. In any event, taking it at its best, there is no showing in the complaint, no facts alleged. Which even established their theory that if he had been black or non-white in some other way, that he would have gotten the promotion. It doesn't say how you compare non-white to female and reach the conclusion that non-white is better, more important, or more significant. Nothing about the statement says that. It equates white and male as factors. Nothing says that if he was non-white, he would have gotten the promotion. So we're left with the metaphysical calculus of, well, how do you weigh non-whiteness versus non-maleness? And I suggest that you can't weigh that. It doesn't show that he would have gotten the promotion. And since he controls his complaint, and we take everything in there as truth, he's got to cross that line and say, there's a reason I think I would have gotten the promotion if I was non-white. But he doesn't say that. He just says it would have removed one of the factors. No suggestion as to why that would have been the controlling factor. Your Honors, there are no other allegations, really, that would support a discrimination claim. Obviously, the overwhelming one is the same race. But the typical fashion is to show that an unqualified or less qualified person received the promotion. So even if there was a racial disparity, he would have to allege something more than I applied, I didn't get it, somebody from another category did. Period. He says that some of the information in the complaint, information which he provided to the decision maker, shows that he was better qualified because Ms. Yetter failed, in his view, with regards to a lot of the metrics that he thought were important. I know he says that, but that's incorrect. And the reason that's incorrect is nothing in there suggests, first of all, what the job entailed, much less the qualifications for the job or the metrics that were important to the company or to the decision maker. We don't even know if this is the same category of job that both of them previously held. Number two is, nothing he says, well, he says nothing about Ms. Yetter. He talks about Ms. Yetter's team. I don't know if she was the supervisor, the lead of the team, a member of the team, a senior or junior member of the team. There can be good players on bad teams and bad players on good teams. And we don't have any indication where Ms. Yetter fell on her team. And we don't have any indication of where Mr. Andrioff fell at all. Sometimes he says, you know, her team was below average. Well, was his team better? We don't have one word about Mr. Andrioff's qualifications, his skill, his ability, how his team was even doing. So we don't have any ability to compare any aspect of their qualifications. We don't have hers because it was all referenced to her team. We don't have his because they're not in there at all. We can't relate them to each other. As I said, many times he says where she ranked, but not where his team ranked. And we don't know if those factors were important to the job, to the company, or to the specific decision maker. So there is just absolutely nothing there that allows us to compare those two on a qualification level and say, had they been of a different race, you might then have some argument that the discrimination was the reason and not simply that they made a decision employers make every day that this one is more suitable for the job than the others. If your honors have no further questions, I will yield my 43 seconds. All right. Thank you very much, Mr. Wilson. Mr. Madoff. Your Honor, you asked me a really good question and I was considering it. You said, what if the claim was that he was not female? What if the statement was she got the job because she's not a male? Let me ask you this question. What if the statement was she got the job because you're white? Do we turn around and we say, well, since she's white, we simply ignore that answer? It's meaningless? It's a statement by the decision maker of the reason that he made the decision. She got the job because you're white. Now, what you've done when you said female was you broke it into two pieces. I've said to you that under Bostock, the United States Supreme Court has told us we can have more than one, but four. You broke it into two but fours. I ask you the reverse. What if the decision maker came back and simply said she got the job because you're white? It leads us to the same conclusion because the question that is relevant at this stage is whether there could be an inference that he would have had the job if he was not white. But if you say she got it because you're white, the only difference between them is that she's female and he's not, which leads to a plausible claim of gender discrimination but not race discrimination. To the contrary, Your Honor. To the contrary. He has not said because you're male. He said because you're white. Now, he may have another reason why her whiteness doesn't exclude her, but we do know that his whiteness excludes him. And if we change his race and we make him black, he is no longer excluded. We come back to the same question. Did he not get the position because he was white? Reverse it. Would he have gotten the position if he were not white? And the answer there is yes. It's the direct answer given by the decision maker, but we can, as Your Honor spoke before, we can now go to some of these other things. There's another thing that I've listened to. My brother said a number of times, we don't know this. We don't know this. We don't know this. Judge Bly, in the report and recommendation, says maybe she got it because she's a woman and didn't engage in gender discrimination. I do not know any of those things. I agree there are things we don't know. We have the inferences from a complaint. Now we find out. We get an answer. We do discovery. If we are at a summary judgment position, we're going to be having a very different conversation. I can't tell you what the evidence. Don't move forward on a complaint just because you say something. The complaint still has to be supported by plausible allegations, and I'm still waiting to hear those plausible allegations. And this might support your contention that this is somehow based on race discrimination. The plausible allegations, respectfully, Your Honor, is the statement by the decision maker that includes the fact that he's white. You've got more than one butt for it. The fact that he's claiming, he's put out there, that he's got greater qualifications, which leads you to the reasonable inference that the reason is race. It's all there. Do you know of any cases anywhere in the country at any level of the judiciary that allow a race discrimination claim either under Title VII or a statute like 1981 to go forward in a promotion scenario where the race of the promoted person was the same as the race of the same as that of the rejected plaintiff? You are now getting awfully specific and technically.  Under the rules, I'm limited to the cases cited here. No. No, you're not. Well, if you're giving me permission to go beyond. No, I would have thought that if I would think that most lawyers would look for cases using the old common law system that are most analogous to the case that they're involved in. So I presume that the two of you have done a little bit of research to see if there are any like cases anywhere in the country. And I'm asking you whether you know of any that support your position. I have not got the specifics of cases, but I do believe that the court below the best case was cited, which would be analogous. I have that in the underlying briefings and opinions. What case is that, do you think? Can you give me just a moment?  Best versus Dental Scheduling Center, 710 Fedsup 3rd, 1295 Middle District of Georgia, 2023. The district court differentiates it because of the procedural posture. But in Best, a plaintiff alleged that an employee of the same race has received a promotion, she thought, but the plaintiff was required to do the work of higher level job while the promoted employee did not. They added some additional facts. The distinction that we have here is we have what I am calling a direct statement. I don't want to use the word evidence simply because I'm not at a summary judgment stage. I don't need evidence. I need an inference, and I have an answer. Why didn't I get this job? Because you're white. You're a white male, but you're white. Not you're male, you're a white male. If you were a black male, you were something other than a white male, then the answer is clearly different. Otherwise, why does the decision maker come back and say white male? Do we assume that he's making things up out of the blue, that he's lying in his answer? I think it's fair to assume that he was telling the truth. That's an inference that we can make. If we want to put him under oath, we want to do the discovery. We can start to explore that, but all we have at this point, we haven't done the discovery. All we have is you are a white male, which translates to you are white and you are male. Two but fours under Bostock. If the court has no further questions, I yield my time. I thank you.  Thank you both very much. We're in recess until tomorrow.